## NICHOLS v. STANDARD HIDE & FUR CO., Inc.

### No. 14651.

Court of Appeal of Louisiana. Orleans.
March 26, 1934.

Weiss, Yarrut & Stich, of New Orleans, for appellant.

Porteous, Johnson & Humphrey and Julian B. Humphrey, all of New Orleans, for appellee.

WESTERFIELD, Judge.

Miss Sadie Nichols bought a fur coat from D. H. Holmes Co., Limited, in September, 1931, for $135. About seven months later she brought the coat to the Standard Hide & Fur Company, Inc., for certain alterations and to be stored during the summer months, agreeing to pay $47 for the storage and remodeling. On October 18th the coat was delivered to Miss Nichols' residence and the balance of the $47 was paid, $20 having been previously paid. Thereafter Miss Nichols made several complaints about the coat involving the manner in which it fitted her, the location of the buttons, and the color of the collar and cuffs, all of which the Standard Hide & Fur Company attempted to remedy to Miss Nichols' satisfaction, but without success. Finally the coat was taken by Miss Nichols to D. H. Holmes Company and exhibited to the manager of its fur department, Mr. Benjamin E. Loup, who informed her that the coat was not the one that she had purchased from the Holmes store, whereupon Miss Nichols, taking the position that there had been a substitution, returned the coat and refused to have any further dealings with the Standard Hide & Fur Company. She purchased another coat for $45 and brought this suit, claiming the purchase price of the old coat, the cost of the new coat, and the amount paid for its alteration, or $227.

There was judgment below in the plaintiff's favor for $182 (the price of the new coat was not allowed), and defendant has appealed.

We find the question of fact which the case presents not without difficulty of solution. The defendant is a fur dealer in rather a large way, and manufactures and stores women's fur coats, handling, according to the testimony of Mr. Ariel Frank, its general manager, three to four thousand garments a year, some of which cost two or three thousand dollars apiece, all without previous claim of substitution or misplacement. It has a business-like system of identification, which, if the factor of error be eliminated, should prevent any confusion as to the identity or ownership of the garments which it handles. We are convinced of the utmost good faith on the part of defendant in this transaction, and are concerned only with the possibility of error on the part of one of its employees in the handling of plaintiff's coat. Moreover, the attitude of plaintiff was, as counsel points out, somewhat vacillating; her first complaint being confined to the fit of the coat, without suggestion of substitution, and her final objection being based upon the ground that the coat tendered her was not the coat she had brought to defendant's establishment. This inconsistency may be explained by the possibility of her having mistaken a similar coat for her own and only learning of her mistake after having taken the coat to D. H. Holmes Company, where it was pronounced a substitute.

Mr. Benjamin E. Loup, the fur and cloth coat buyer of D. H. Holmes Company, testified that the coat in question was not the coat sold to Miss Sadie Nichols, because his company did not handle coats of that model or of that kind of fur or with the character of lining which it contained. He also testified that the coat did not bear the silk label with Holmes' name on it or a secret identification tag sewed in the inside of the lining. So far as the silk label is concerned, it might easily have been removed during the remodeling and a similar one with the name of defendant put in its place. The secret tag might also have been removed, but, since it was sewed to the fur underneath the lining, it is less likely to have been taken out in the process, unless with deliberation, and there is no testimony to that effect. The evidence of Mr. Loup is the deciding factor in what would otherwise be a very difficult question of fact concerning the identity of the coat delivered to plaintiff. We can see no reason why Loup would take such a positive stand unless he was sure of his ground. The fact that he is, in a sense, a rival dealer, and that plaintiff is his customer, are circumstances which we have considered insufficient to place him in the position of an interested witness. The trial court evidently believed him, and we see nothing in the record which would discredit his testimony.

Our conclusion is that the judgment appealed from should not be disturbed, and, for the reasons herein given, it is affirmed.

Affirmed.